Michael I. Santucci (Florida Bar No. 105260)
Admitted *Pro Hac Vice*
mis@500law.com
SANTUCCI PRIORE, P.L.
200 South Andrews Avenue, Suite 100
Fort Lauderdale, Florida 33301
Telephone: 954-351-7474
Facsimile: 954-351-7475

Attorneys for Plaintiffs, ERNEST EVANS, THE LAST TWIST, INC., and THE ERNEST EVANS CORPORATION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| ERNEST EVANS, an individual, THE LAST TWIST INC., a Pennsylvania for Profit Company and THE ERNEST EVANS CORPORATION, a Pennsylvania for Profit Company,<br><br>Plaintiffs,<br><br>vs.<br><br>HEWLETT-PACKARD COMPANY, a Delaware for Profit Company, and PALM, Inc, a Delaware for Profit Company,<br><br>Defendants. | Case No.: 13-cv-02477-JCS<br>*Assigned to Magistrate Judge Joseph C. Spero*<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT [DE-50]**<br><br>Date: August 15, 2013<br>Time: 8:00 a.m.<br>Ctrm: 8, 19th Floor<br>Judge: Honorable William H. Alsup |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

Plaintiffs, Ernest Evans, The Last Twist, Inc., and The Ernest Evans Corporation (collectively "Plaintiffs") respectfully respond to Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint [DE-50]. The grounds opposing said motion are set forth below.

---
PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO DIMISS
CASE NO. 13-CV-02477-JCV

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs submit this Memorandum of Law in opposition to the Motion to Dismiss Plaintiffs' First Amended Complaint filed by Defendants, Hewlett-Packard Company and Palm, Inc. (collectively "Defendants").

**I.   STANDARD**

In order to state a claim for relief, Federal Rule of Civil Procedure Rule 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, this Court must accept all of the Plaintiffs' allegations as true and these allegations must be read in the light most favorable to the Plaintiffs. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When ruling on a Rule 12(b)(6) motion to dismiss, the Court may only consider the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007). The general rule on a motion to dismiss is that the "scope of the review must be limited to the four corners of the complaint." *Speaker v. U.S. Dep't. of Health & Human Servs.*, 623 F.3d 1371, 1379 (11th Cir. 2010). That is, the Court may not consider material beyond the pleadings, documents attached to the complaint, or documents to which the complaint refers extensively or which form the basis of the Plaintiffs' claims in the complaint. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

The Defendants' Memorandum of Points begins by inserting factual allegations which are not appropriate for consideration on a Rule 12(b)(6) motion to dismiss. The Defendants cite as gospel allegations contained in their own unsubstantiated and self-serving affidavits they submitted to the

Florida court in support of their motion to transfer. Defendants' Motion to Dismiss, n. 2. Yet these affidavits and declarations are not pleading exhibits as they do not form the basis of the complaint and, as such, may not be considered in the pending motion to dismiss. *Ritchie*, 342 F. 3d at 908. A district court "*may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Schneider v. Calif. Dept. of Corrections*, 151 F. 3d 1194, 1197, n. 1 (9th Cir. 1998)(emphasis in original).

Even though Defendants claim that the sales of the infringing app were nominal (Defendants' Motion to Dismiss, n. 2), this fact is immaterial. Count II of Plaintiffs' Amended Complaint alleges federal trademark dilution, blurring, and tarnishment of Plaintiffs' marks. According to *Moseley v. Victoria Secret Catalogue, Inc.*, 537 U.S. 418, 433-434, 123 S.Ct. 1115 (2003), actual dilution can be proven through circumstantial evidence such as where the junior and senior marks are identical, while "consequences of dilution, such as an actual loss of sales or profits," need not be proven. The case also noted a statutory gap of "dilution by tarnishment," which was filled by the 2006 Federal Antidilution Act (Trademark Dilution Revision Act or "TDRA.") TDRA streamlined the rule that a famous mark can be diluted by blurring or tarnishment "regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury," and defined "dilution by blurring" as "association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark." Id.; See also, 15 U.S.C. § 1125(c).

Furthermore, claims involving the right to publicity not only arise when a person uses the name or likeness of another, for a commercial reason, but also arise when "appropriation of the name and likeness [ ] brings injury to the feelings, that concern's one's own peace of mind, and that is mental and subjective." *Baugh v. CBS, Inc*., 828 F. Supp. 745, 753 (N.D. Cal. 1993) (internal citations omitted). As such, any humiliation, embarrassment, and mental distress a person suffers, is taken into account when calculating damages. See *Abdul-Jabbar v. Gen. Motors Corp.,* 85 F.3d 407, 416 (9th Cir. 1996). Also, the common law right of publicity, does not require that the

misappropriation to have been done knowingly. *No Doubt v. Activision Publ'g, Inc.*, 192 Cal. App. 4th 1018, 1028, 122 Cal. Rptr. 3d 397, 405 (Cal. Ct. App. 2011), review denied (June 8, 2011).

Although the injury stemming from violation of the right of publicity "may be largely, or even wholly, of an economic or material nature," we have recognized that "it is quite possible that the appropriation of the identity of a celebrity may induce humiliation, embarrassment, and mental distress." *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1103 (9th Cir. 1992). See also, *Henley v. Dillard Dept. Stores*, 46 F. Supp. 2d 587, 597 (N.D. Tex. 1999) ("The plaintiff in a right to publicity action is not required to show that the defendant made money off the commercial use of the name or likeness… It is immaterial that Defendant made little profit after the ad ran, only ran the advertisement once, and received no feedback on the ad").

For these reasons, the allegations contained in footnote 2 of the Defendants' Memorandum should be stricken[1] or disregarded for purposes of the motion to dismiss.

## II. THE AMENDED COMPLAINT STATES A CLAIM FOR TRADEMARK INFRINGEMENT

Plaintiffs' Amended Complaint sufficiently alleges all of the elements to impose both direct and contributory liability for trademark infringement on the Defendants. Contrary to the Defendants' assertions, the Amended Complaint alleges that the Defendants' infringement was indeed direct. Plaintiffs' alleged that the Defendants themselves offered the Chubby Checker app in interstate commerce (Am. Compl. at ¶29) and that the Defendants had actual knowledge of the infringement on the Plaintiffs' name (Am. Compl. at ¶¶29, 30). Most importantly, the Plaintiffs have alleged that the Defendants "maintained primary control over the use of the name and mark "The Chubby Checker" in connection with the approval, acceptance, uploading, hosting, advertising, marketing, downloading, sale, use, and making provisions for the maintenance" of the offending app. Am.

---

[1] Plaintiffs wish to advise the Court that in addition to the inappropriateness of these affidavits in consideration of a motion to dismiss, the Plaintiffs vehemently deny the allegations contained therein and proffer to the Court that they have evidence that refutes the factual allegations made by the Defendants in these affidavits. This evidence will be presented to the Court at the appropriate time.

PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO DIMISS
CASE NO. 13-CV-02477-JCV

Compl. at ¶31. This direct infringement continued after the Defendants were put on notice of the infringement. Am. Compl. at ¶37[2].

In addition to direct infringement, the Defendants' infringement was also contributory. "Contributory trademark infringement is a judicially created doctrine that derives from the common law of torts." *Tiffany (NJ) Inc. v. eBay Inc.,* 600 F.3d 93, 104 (2d Cir. 2010); *see also Metro-Goldwyn-Mayer Studios, Inc. v. Grokster*, Ltd., 545 U.S. 913, 930 (2005) (stating in the context of the Copyright Act that, "[a]lthough '[t]he Copyright Act does not expressly render anyone liable for infringement committed by another,' . . . these doctrines of secondary liability emerged from common law principles and are well established in the law."). See also *Coach, Inc. v. Swap Shop, Inc.*, 12-60400-CIV, 2012 WL 6830423 (S.D. Fla. 2012) ("actual knowledge is not required. All that must be shown [for contributory infringement] is that [defendant] had reason to know" of the infringing activity.")

The Defendants' denials of both direct and contributory infringement belie credibility. First, there is no dispute that the marketing of a sexually themed app known by the same name as the Plaintiff's long-recognized, famous trademark and stage name has been properly alleged. It is beyond common sense comprehension for any person or entity to believe that the Chubby Checker app marketed and sold by the Defendants was intended for any purpose other than to mimic and infringe on the Plaintiffs' well known performing name. Second, Plaintiffs have alleged a myriad of facts that together plausibly demonstrate the circumstances necessary to show that Defendants knew or should have known that the Defendants were violating the Plaintiffs' trademark rights in bad faith. For example, Plaintiffs allege that the Defendants maintained "primary control" over the use of the "The Chubby Checker" app, including specific approval and acceptance of the app, advertising and marketing of the app, and making provision for the maintenance of the app, as well as the revenues

---

[2] These allegations are taken from the Amended Complaint and are presumed to be true for purposes of ruling on Defendants' motion to dismiss. *See Marder v. Lopez*, 450 F.3d 445, 447 n.1 (9th Cir. 2006).

PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO DIMISS
CASE NO. 13-CV-02477-JCV

generated therefrom. Am. Compl. at ¶31. Plaintiffs allege that the Defendants profited from the sale of the offending app, and it is reasonable to infer that Defendants were aware of and monitored these revenue streams. These allegations are more than sufficient to state a claim for relief for direct trademark violation. The Defendants may indeed eventually deny these allegations in their answer but for purposes of the pending motion to dismiss, they are taken as true, the Defendants' denials notwithstanding. *Schneider, supra.*

In *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,* 456 U.S. 844, 72 L. Ed. 2d 606, 102 S. Ct. 2182, 214 U.S.P.Q. 1 (1982), the United States Supreme Court stated the following general rule clarifying the conduct considered a contributory trademark infringement:

> [L]iability for trademark infringement can extend beyond those who actually mislabel goods with the mark of another. Even if a manufacturer does not directly control others in the chain of distribution, it can be held responsible for their infringing activities under certain circumstances. Thus, if a manufacturer or distributor (…) continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorily responsible for any harm done as a result of the deceit.

The Ninth Circuit upheld pleadings which alleged contributory copyright and trademark infringement by a flea market's operators due to the sales of counterfeit audio recordings by their vendors. "The facts alleged by [plaintiff], however, reflect that the defendants reap substantial financial benefits from admission fees, concession stand sales, and parking fees, all of which flow directly from customers who want to buy the counterfeit recordings at bargain basement prices." *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 37 U.S.P.Q.2d 1590 (9th Cir. 1996).

The Ninth Circuit Court of Appeals has also held that: "Whether he believed himself within the law or not, he was knowingly and deliberately cashing in upon the good will of [plaintiff]. This is such an infringement as will justify an accounting of profits." *Wolfe v. National Lead Co.*, 272 F.2d 867, 871, 123 U.S.P.Q. 574, 576 (9th Cir. 1959), cert. denied, 362 U.S. 950, 4 L. Ed. 2d 868, 80 S. Ct. 860, 125 U.S.P.Q. 668 (1960).

Defendants then assert that they cannot be held liable under a contributory infringement claim because Plaintiffs failed to allege that the infringement continued after notice. This position

ignores the clear allegation in the Amended Complaint that the infringement continued after Defendants were ordered to cease and desist by Plaintiffs' counsel. Am. Compl. at ¶37. Defendants then claim that they ceased marketing the offending app once they were placed on notice by Plaintiffs' counsel. Again, Defendants cite to the declaration of their employee submitted in support of the Defendants' motion to transfer as the factual basis for this factual allegation but the statements in the declaration are neither accepted nor stipulated facts[3]. At the very least, this creates a factual dispute not only inappropriate for resolution on a motion to dismiss but also inappropriate for consideration on a motion to dismiss.  Furthermore, throughout the Amended Complaint, Plaintiffs allege that the infringement and other wrongful acts were knowing and willful.

Defendants also claim that there are no allegations directed to Defendant Palm, Inc. Once again, the Defendants ignore the clear statements throughout the Amended Complaint that the offending actions were taken by the "Defendants," both of them, and that they are jointly and severally liable for the actions taken by them together. This joint infringement began in 2006 and continued through 2012. Am. Compl. at ¶¶29, 37.  Throughout the Amended Complaint, Plaintiffs allege that both Defendants engaged in the complained of acts.

Notwithstanding Defendants' contrary arguments, the Amended Complaint contains sufficient allegations to state a claim for both direct and contributory trademark infringement against both Defendants.

**III.   PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE CDA**

Defendants next argue that Plaintiffs' claims are barred by § 230 of the Communications Decency Act ("CDA"), which provides, in relevant part, that "[n]o provider or member of an

---

[3] The Court may take judicial notice of matters that are either (1) generally known within the trial court's territorial jurisdiction, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). The declarations of Defendants' officers and employees are not documents whose credibility, relevance, and authenticity are uncontested. *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. §230(c)(1)[4].

Defendants insist that they are an "interactive computer service" and they cite various cases for the blanket proposition that "*any* claim against an internet service provider based on content created by a third party, other than a *federal* intellectual property claim, is barred." See Defts' Motion to Dismiss at p. 5 (citing, *i.e., Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007)).

Defendant' reliance on these cases is misplaced. There is no question that §230 "provides broad immunity [to websites that publish] content provided primarily by third parties." *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003). But Defendants ignore the nature of Plaintiffs' allegations, which accuse Defendants not of publishing infringing content, but rather of knowingly and willingly advertising, marketing, and selling the offending product that violated the Plaintiffs' statutory right of publicity. *Fraley v Facebook, Inc.,* 830 F. Supp. 2d 785, 801 (N.D. Cal. 2011).

> Although Facebook meets the definition of an interactive computer service under the CDA, *see* 47 U.S.C. § 230(f)(2) (defining an interactive computer service, in part, as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server"), in the context of Plaintiffs' claims, it also meets the statutory definition of an information content provider, *see id.* §230(f)(3) (defining an information content provider as "any person or entity that is responsible, in whole *or in part*, for the creation or development of information provided through the Internet or any other interactive computer service" (emphasis added)). "<u>A website operator can be both a service provider and a content provider</u>. . . [A]s to content that it creates itself, or is 'responsible, in whole or in part' for creating or developing, the website is also a content provider." *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F. 3d 1157, 1162 (9th Cir. 2008) (en banc).
> …

---

[4] At the onset, this portion of the Motion to Dismiss should be denied as the Defendants' CDA claim is more properly raised as an affirmative defense. *Barnes v. Yahoo!, Inc.,* 565 F. 3d 560, 563 (9th Cir. 2009) in which the court stated that because "[t]he assertion of an affirmative defense does not mean that the plaintiff failed to state a claim, [it] does not by itself justify dismissal under Rule 12(b)(6)." The court observed that the defendant "ought to have asserted its affirmative defense by responsive pleading, which is the normal method of presenting defenses except for those specifically enumerated in Rule 12(b). *Id.*

> CDA immunity "applies only if the interactive computer service provider is not also an 'information content provider,'" *Roommates.com*, 521 F.3d at 1162, and therefore, construing all facts in the light most favorable to Plaintiffs, Defendant is not at this stage entitled to CDA immunity.

*Id.*, at 801-802 [Emphasis added].

As this Court found in *Fraley*, the CDA does not provide the protection to the Defendants that they assert. This is not a situation where the Defendants had no knowledge or control over an infringing publication on their websites. Defendants' online app store and websites are not open fora. The infringing product, advertisements, and publications are not merely posted to Defendants' websites unbeknownst to the Defendants like on a social networking website. Plaintiffs pled sufficient facts regarding Defendants' approval process and other knowing affirmative activities. Am. Compl. at ¶¶ 29, 30, and 74. The allegations of Defendants' participation passes the threshold of just a "passive acquiescence in the misconduct of its users."[5]  Plaintiffs alleged that Defendants are liable for the infringing app that they actively approved, marketed, and from which they shared in the profits.

Even if Defendants' flea market analogy is accepted, which Plaintiffs do not concede is appropriate, like flea markets, Defendants can be held liable for infringement. See *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264-65 (9th Cir. 1996) ("a swap meet can not disregard its vendors' blatant trademark infringements with impunity…Just as liability for copyright infringement can extend beyond those who actually manufacture or sell infringing materials, our law recognizes liability for conduct that assists others in direct trademark infringement.")

In addition to the inapplicability of the CDA to the Defendants and their actions, as alleged, section 230 of the CDA states that it has "[n]o effect on intellectual property law" and "[n]othing in this section shall be construed to limit or expand any law pertaining to intellectual property." Id. Further, it is well established that right of publicity statutes is one in the same as intellectual

---

[5] *Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 701 (S.D.N.Y. 2009).

property. See *Doe v. Friendfinder Network, Inc.,* 540 F. Supp. 2d 288, 302 (D.N.H. 2008) ("the right of publicity is a widely recognized intellectual property right." *Almeida v. Amazon.com, In*c., 456 F.3d 1316, 1321-1322 (11th Cir.2006). Such a claim therefore arises out of a "law pertaining to intellectual property" within the meaning of the statute. See 1 McCarthy, *Rights of Publicity,* § 3:42 (opining that § 230 immunity does not apply to claim for infringement of right to publicity by virtue of § 230(e)(2)).); *Atl. Recording Corp. v. Project Playlist*, Inc., 603 F. Supp. 2d 690, 704 (S.D.N.Y. 2009) ("Accordingly, I conclude, as a matter of law, that Section 230(c)(1) does not provide immunity for either federal or state intellectual property claims."). Therefore, section 230 is not applicable in this situation. The CDA does not provide, even service providers in immunity from "law[s] pertaining to [federal] intellectual property." *Almeida* at 1322.

## IV. PENNSYLVANIA'S RIGHT OF PUBLICITY APPLIES TO THIS CASE.

Defendants claim that Pennsylvania's right of publicity law should not apply, first because there are no allegations that any acts took place in Pennsylvania to Pennsylvania residents, and, second, that they are an innocent publisher under that statute.

Plaintiffs' cause of action arises under 42 Pa. Cons. Stat. §8316, which states that "[a]ny natural person whose name or likeness has commercial value and is used for any commercial or advertising purpose without the written consent of such natural person or the written consent of any of the parties authorized in subsection (b) may bring an action to enjoin such unauthorized use and to recover damages for any loss or injury sustained by such use." 42 Pa. Cons. Stat. §8316(a). The statute defines "Name" or "Likeness" as "[a]ny attribute of a natural person that serves to identify that natural person to an ordinary, reasonable viewer or listener, *including*, but not limited to, *name*, signature, photograph, image, likeness, voice or a substantially similar imitation of one or more thereof." 42 Pa. Cons. Stat. §8316(e)(emphasis added). It goes on to note that "Commercial value" means "[v]aluable interest in a natural person's name or likeness that is developed through the investment of time, effort and money." *Id.; see also Facenda v. N.F.L. Films, Inc.*, 542 F. 3d 1007, 1027 (3d Cir. 2008). Finally, the statute explains that "commercial or advertising purpose" means:

PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO DIMISS
CASE NO. 13-CV-02477-JCV

> (1) Except as provided in paragraph (2), the term shall include the public use or holding out of a natural person's name or likeness:
>
>> (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, services or businesses;
>> (ii) for the purpose of advertising or promoting products, merchandise, goods or services of a business; or
>> (iii) for the purpose of fundraising.

42 Pa. Cons. Stat. §8316(e).

As to the Defendants' first defense, the Amended Complaint specifically alleges that the Defendants "engage in business throughout the United States," which would include Pennsylvania. Am. Compl. at ¶¶ 7, 8. The Amended Complaint also alleges that the Defendants' App Catalog is a web-based store at which the offending and infringing Chubby Checker app was sold. Am. Compl. at ¶¶ 27, 28. This means that the Chubby Checker app was offered for sale in Pennsylvania and, as Plaintiffs are Pennsylvania residents, Pennsylvania law applies to this claim. This Court has jurisdiction over these claims under 28 U.S.C. §1332 and 28 U.S.C. §1338(b).

As to the second basis, whether the Defendants are innocent publishers is a question of fact, inappropriate for determination on a motion to dismiss as Plaintiffs have alleged that the Defendants are anything but innocent. Also, except for extraordinary limited circumstances not present here, a complaint should not be dismissed on the basis of an affirmative defense. "Only when the plaintiff pleads itself out of court – that is, admits all the ingredients of an impenetrable defense – may a complaint that otherwise states a cause of action be dismissed under Rule 12(b)(6)." *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F. 3d 899, 901 (7th Cir. 2004).

The innocent publisher defense is plainly an affirmative defense. *See, e.g., L'anza Research Int'l, Inc., v. Quality King Distribs., Inc.*, 98 F. 3d 1109, 1112 (9th Cir. 1996), rev'd on other grounds *sub nom Quality King Distribs., Inc. v. L'anza Research Int'l, Inc.*, 523 U.S. 135 (1998). As such, the Defendants will bear the burden of proving this defense.

---

PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO DIMISS
CASE NO. 13-CV-02477-JCV

## V. CALIFORNIA'S RIGHT OF PUBLICITY APPLIES TO THIS CASE.

California has long recognized a right to protect one's name and likeness against appropriation by others for their advantage. *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001). California law provides two vehicles for asserting such a right: a common law cause of action for commercial misappropriation, and a statutory remedy for commercial misappropriation under California Civil Code §3344. *Id.* To state a common law cause of action for misappropriation, a plaintiff must plead sufficient facts to establish "(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury." *Id.* (quoting *Eastwood v. Superior Court*, 149 Cal. App. 3d 409, 417 (1983)). To state a statutory cause of action under §3344, a plaintiff must plead all the elements of the common law action and must also prove (5) "a knowing use by the defendant," and (6) "a direct connection between the alleged use and the commercial purpose." *Id.* Plaintiffs' Amended Complaint contains all of these allegations and Defendants do not dispute this.

Rather, Defendants' objections to this count rest on the fact that Plaintiffs are Pennsylvania residents. Defendants contend that §3344 is only available to California residents, citing *Cairns v. Franklin Mint Co.*, 292 F. 3d 1139, 1145 n. 3 (9th Cir. 2002) and *Hebrew Univ. of Jerusalem v. Gen. Motors, LLC*, 878 F. Supp. 2d 1021 (C.D. Cal. 2012). However, these cases involved a different statute, what is now California Civil Code §3344.1, governing the right of publicity for deceased persons (the *Cairns* decision concerned Princess Diana after her death and the *Hebrew Univ.* case involved the likeness of Albert Einstein). The two statutes are materially different, with §3344.1 specifically containing a definitive statement that the rights protected under the statute are "property rights," a statement nowhere found in §3344. Thus, while there is a clear indication in §3344.1 that the legislature intended to limit the post-mortem right of publicity to California domiciliaries, such an indication is specifically not found in §3344.

Since there is no controlling law, either in §3344 or in cases interpreting it, which would limit its applicability to California residents only[6], the issue remains as to whether §3344 should apply to this case. Here, we have two California Defendants, clearly subject to California law and presumably aware of its existence, and who chose California as the situs of this action. Contrary to Defendants' assertions in their motion that Plaintiffs "cannot simply pick and chose the state law that suits their tastes (or pocketbooks)," Defendants' Motion to Dismiss at ¶ 8, it was the Defendants themselves who chose this forum by moving the Florida court to transfer the case here.

In a federal question action where the federal court is exercising supplemental jurisdiction over state claims, the federal court applies the choice-of-law rules of the forum state, in this instance, California. *Paracor Finance, Inc., v. General Elec. Capital Corp.*, 96 F. 3d 1151, 1164 (9th Cir. 1996). California applies a "governmental interest" approach to resolve conflict of law questions. *Reich v. Purcell,* 67 Cal. 2d 551, 554, 63 Cal. Rptr. 31, 432 P. 2d 727 (1967). This approach requires the court to "find the proper law to apply based upon the interests of the litigants and the involved states." *Offshore Rental Co. v. Continental Oil Co.,* 22 Cal. 3d 157, 161, 148 Cal. Rptr. 867, 583 P. 2d 721 (1978). "A separate choice-of-law inquiry must be made with respect to each issue in a case." *Application Group, Inc. v. Hunter Group, Inc.*, 61 Cal. App. 4th 881, 72 Cal. Rptr. 73 (1998).

A court applying California's governmental interests approach must conduct a three-step analysis. *Arno v. Club Med. Inc.*, 22 F. 3d 1464, 1467 (9th Cir. 1994). First, the court must determine whether there is a difference between the laws of the two states involved in the given action. *Id*. Second, assuming a difference exists, the court must then examine each state's interest in applying its own law to determine whether a "true conflict" exists. *Id*. Third, if a true conflict exists, the court must determine the relative impairment to each jurisdiction under the other's rule of law. *Id*.

First, California law and Pennsylvania law differ little with regard to right of publicity claims. Both states recognize both common law and statutory right of publicity claims. *Compare Downing,*

---

[6] Cases interpreting §3344 have all involved California residents. *See Cairns v. Franklin Mint Co.,* 24 F. Supp. 2d 1013, 1028 n. 11 (C.D. Cal. 1998).

*supra* (recognizing California law providing for both a common law cause of action for commercial misappropriation and a statutory remedy for commercial misappropriation under California Civil Code §3344) *with Lewis v. Marriott Int'l, Inc.*, 527 F. Supp. 2d 422 (E.D. Pa. 2007)(recognizing Pennsylvania's enactment of a statutory remedy for commercial misappropriation in 42 Pa. Cons. Stat. §8316 did not abrogate the existing common law right of publicity).

Where, as here, the law is essentially the same, the Court can and should apply California law regarding the activities of these California-based defendants. "If there is no 'true conflict,' then the forum 'is entitled to apply its own law.'" *Insurance Co. of N. Am. v. Federal Express Corp.*, 189 F.3d 914.920 (9th Cir. 1999), citing *Rivera v. Southern Pacific Transp. Co.*, 217 Cal. App. 3d 294, 299, 266 Cal. Rptr. 11 (1990). Since there is no true conflict, California would have an interest similar to Pennsylvania's in having its law apply in this case involving in-state Defendants and infringement that occurred in California as well as in Pennsylvania. The allegedly offending activity occurred within both states' borders and both states recognize actions for violations of the right of publicity.

## VI. CONCLUSION

Plaintiffs have alleged more than sufficient facts to demonstrate that the actions of the Defendants constituted both direct and contributory trademark infringement. The Defendants attempts to inject unsubstantiated and premature factual defenses into a motion to dismiss should be stricken or ignored. The Plaintiffs have further sufficiently alleged trademark dilution and tarnishment and violations of both Pennsylvania and California rights to publicity. The Defendants' Motion to Dismiss should be denied and they should be made to answer for their actions.

| | |
|---|---|
| 1 | Respectfully submitted, |
| 2 | **SANTUCCI PRIORE, P.L.** |
| | *Attorneys for Plaintiffs* |
| 3 | 200 South Andrews Avenue |
| | Suite 100 |
| 4 | Fort Lauderdale, Florida 33301 |
| | PH: 954.351.7474 |
| 5 | FX: 954.351.7475 |

*/s/ Michael I. Santucci*
Michael I. Santucci
mis@500law.com
Admitted *Pro Hac Vice*
Florida Bar No. 0105260

James Leonard Brown, Esq. - SBN 40702
*Attorney for Plaintiffs*
E-mail: jameslbrownlaw@yahoo.com
LAW OFFICE OF JAMES LEONARD BROWN, APC
5900 Wilshire Boulevard, Suite 2645
Los Angeles, California 90036-5028
Telephone: 213-251-2332
Facsimile: 213-607-1456

Willie E. Gary (Florida Bar No. 187843)
*Attorney for Plaintiffs (pro hac vice application pending)*
E-mail: weg@williegary.com
GARY, WILLIAMS, PARENTI, WATSON & GARY, P.L.
221 E. Osceola Street
Stuart, Florida 34994
Telephone: 772-283-8260
Facsimile: 772-220-3343

---

PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO DIMISS
CASE NO. 13-CV-02477-JCV

**CERTIFICATE OF SERVICE**

I certify that all counsel of record is being served on July 22, 2013 with a copy of this document via the Court's CM/ECF system.

/s/ *Michael I. Santucci*
Michael I. Santucci

---

PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO DIMISS
CASE NO. 13-CV-02477-JCV