United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ERNEST EVANS, et al.,

     Plaintiffs,

  v.

HEWLETT-PACKARD COMPANY, et al.,

     Defendants.

                              /

No. C 13-02477 WHA

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

**INTRODUCTION**

In this trademark dispute, defendants move to dismiss all claims.  For the reasons below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

**STATEMENT**

Defendant Hewlett-Packard Company is a multinational technology corporation. Defendant Palm, Inc. is allegedly a wholly-owned subsidiary of HP.  "The Chubby Checker" is the name of a risqué software application offered for sale and download on the HP App Catalogue, a web-based store operated by Palm and HP.  The app purports to estimate the size of a man's genitals based on his shoe size.  The name "Chubby Checker" is thus used as a vulgar pun.

Plaintiff Ernest Evans is and has long been known by his stage name "Chubby Checker."  The complaint describes him as "a legendary musical entertainer" with "icon-status."  Plaintiffs The Last Twist Inc. and The Ernest Evans Corporation own various

1   registered marks associated with the name "Chubby Checker" (Amd. Compl. ¶¶ 15, 30, Exhs.

2   A–G).

3       The complaint alleges that defendants began offering the Chubby Checker app for sale

4   on the HP App Catalogue in October 2006.  Defendants allegedly did so with actual knowledge

5   of plaintiffs' marks and actual knowledge that no plaintiff had consented to the use of the

6   marks.  Defendants nonetheless knowingly and willfully advertised, marketed, and sold the app

7   in violation of those marks.  In order for an app to be offered for sale on the HP App

8   Catalogue, defendants employed an "application and approval process and knowingly decided

9   to approve, accept, upload, host, market, advertise, sell and make provisions for the

10  maintenance and updating of 'The Chubby Checker' app" (*id.* at ¶ 29).  Plaintiffs allege that at

11  all relevant times, defendants "maintained primary control" of the use of the name and mark,

12  as well as control over the revenues generated from sales of the app.  The complaint does not

13  allege, however, that defendants were responsible for the creation or naming of the app.

14      In September 2012, plaintiffs informed defendants of the alleged infringement by way

15  of a cease-and-desist letter, though the complaint alleges that "[a]s of the filing of this law suit

16  [on February 12, 2013], the infringement continues" (*id.* at ¶ 37).  The complaint alleges

17  claims for:  (1) federal trademark infringement, (2) federal trademark dilution, (3) federal

18  unfair competition, (4) common law unfair competition, (5) common law trademark

19  infringement, (6) unauthorized use of name or likeness under Pennsylvania law, and (7)

20  unauthorized use of name or likeness under California law.  Defendants now move to dismiss

21  all claims.

22                                  **ANALYSIS**

23      To survive a motion to dismiss, a complaint must contain sufficient factual matter,

24  accepted as true, to state a claim for relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556

25  U.S. 662, 663 (2009).  A claim is facially plausible when there are sufficient factual allegations

26  to draw a reasonable inference that the defendant is liable for the misconduct alleged.  While a

27  court "must take all of the factual allegations in the complaint as true," it is "not bound to

28

**United States District Court**
For the Northern District of California

2

**United States District Court**
For the Northern District of California

1   accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*,

2   550 U.S. 544, 555 (2007).

3          **1.**    **TRADEMARK INFRINGEMENT.**

4          Defendants argue that plaintiffs have failed to adequately state their various federal and

5   common law claims for trademark infringement.  This order disagrees.

6          The crux of defendants' argument is that the complaint only attempts to plead claims

7   for contributory infringement and not for direct infringement.  To be liable for contributory

8   infringement, defendants argue that they must have had actual knowledge of the infringement

9   and yet continued to sell the app.  Defendants urge that the complaint fails to allege either that

10  defendants knew of the infringement or that defendants continued to sell the app after

11  receiving plaintiffs' cease-and-desist letter.  This claim is incorrect.

12        The complaint specifically alleges that when defendants chose to place the app in

13  commerce, defendants had "actual knowledge" that none of the plaintiffs had consented to the

14  use of the name "Chubby Checker," and that defendants had "full knowledge" of plaintiffs'

15  marks from the beginning of their approval process (Amd. Compl. ¶¶ 29–30).  Defendants swat

16  these allegations aside because some are made "upon information and belief."  But the

17  complaint alleges sufficient facts to support these beliefs, such that the claims are plausible.

18  For example, the complaint alleges that the Mr. Evans is famous and internationally known by

19  his stage name and registered trademark "Chubby Checker."  The complaint alleges that the

20  app catalog maintained by defendants advertised the lascivious nature of the app and that

21  defendants "maintained primary control over the use of the name and mark 'The Chubby

22  Checker' in connection with . . . the offending app."  The complaint further alleges that

23  defendants employed a detailed application and approval process for the app (*id.* at ¶¶ 1,

24  15–18, 27–31).  Construed favorably to the plaintiffs, these allegations are sufficient to permit

25  an inference that defendants knew, or could have reasonably deduced that the owner of the

26  Chubby Checker mark would never have consented to license the mark for such a vulgar

27  purpose.

28

1    This is sufficient to survive a motion to dismiss under Rule 12(b)(6) and the pleading

2    standards of *Iqbal* and *Twombly*.  Defendants' motion to dismiss plaintiffs' trademark

3    infringement claims is therefore **DENIED**.

4              **2.    SECTION 230 OF THE COMMUNICATIONS DECENCY ACT.**

5    Defendants argue that plaintiffs' remaining state law claims are barred by Section 230

6    of the Communications and Decency Act.  This order agrees.

7    The CDA states that "[n]o provider or user of an interactive computer service shall be

8    treated as the publisher or speaker of any information provided by another information content

9    provider," and expressly preempts any state law to the contrary.  47 U.S.C. 230(c)(1), (e)(3).

10   Put differently, the CDA safe harbor protects internet *service providers* from being sued based

11   on material published by *content providers*.  Section 230 was enacted "to promote the

12   continued development of the Internet and other interactive computer services" and "to

13   preserve the vibrant and competitive free market that presently exists for the Internet and other

14   interactive computer services, unfettered by Federal or State regulation."  47 U.S.C.

15   230(b)(1)(2).  Our court of appeals has explained:

16              The majority of federal circuits have interpreted the CDA to
              establish *broad federal immunity* to any cause of action that would
17            make service providers liable for information originating with a
              third-party user of the service. . . .  Because material on a website
18            may be viewed across the Internet, and thus in more than one state
              at a time, permitting the reach of any particular state's definition of
19            intellectual property to dictate the contours of this federal
              immunity would be contrary to Congress's expressed goal of
20            insulating the development of the Internet from the various
              state-law regimes.
21

22   *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007) (internal quotations and

23   citations omitted, emphasis added).  Section 230 of the CDA bars state law claims against

     internet service providers based on content created by a third party.  *Ibid.*
24

25   Section 230(f)(3) defines a content provider as "any person or entity that is responsible,

     in whole or in part, for the creation or development of information provided through the
26
     Internet or any other interactive computer service."  Our court of appeals held that if a website
27
     provider displays content "created entirely by third parties, then it is only a *service provider*
28
     with respect to that content."  *Fair Hous. Council of San Fernando Valley v. Roommates.Com,*

United States District Court
For the Northern District of California

4

United States District Court
For the Northern District of California

1  *LLC*, 521 F. 3d 1157, 1162 (9th Cir. 2008) (emphasis added).  Although plaintiffs' complaint is

2  cleverly-worded, it does not allege that defendants created the app at issue here.  Rather, it

3  appears that the app was created entirely by third parties.  Thus, this order holds that for the

4  purposes of Section 230, defendants are internet service providers that host third-party content

5  and not content providers.

6       Plaintiffs rely on *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785 (N.D. Cal. 2011)

7  (Judge Lucy Koh), in an attempt to salvage their state law claims, but that decision is

8  inapposite.  In *Fraley*, the plaintiffs, who were users of the Facebook social networking site,

9  accused the company "not of publishing tortious content, but rather of creating and developing

10  commercial content that violates their statutory right of publicity."  *Id.* at 801.  Facebook

11  created new content with information that it took from plaintiffs without their consent —

12  Facebook was therefore a *content* provider as well as a *service* provider, and thus not entitled

13  to immunity under Section 230.  Here, there are no comparable allegations that defendants

14  created or developed the app at issue (or any other app).  The allegations only show that

15  defendants' HP App Catalogue is an interactive computer service provider.  It therefore enjoys

16  the broad immunity provided under Section 230 of the CDA from all state claims relating to

17  publishing content created by third parties.

18       Plaintiffs' four state law claims — violation of Pennsylvania's unfair competition and

19  trademark laws and Pennsylvania's and California's right of publicity statutes — are

20  preempted by the CDA.  Defendants' motion to dismiss those claims is accordingly **GRANTED**.

                                    **CONCLUSION**

22       For the foregoing reasons, defendants' motion to dismiss is **GRANTED IN PART** and

23  **DENIED IN PART**.  Plaintiffs may seek leave to amend their amended complaint and will have

24  until **AUGUST 30**, **2013**, to file a motion, noticed on the normal 35-day track, for leave to file a

25  second amended complaint.  A proposed amended complaint must be appended to this motion.

26  Plaintiffs should plead their best case.  The motion should clearly explain how the amendments

27  to the complaint cure the deficiencies identified herein, and should include as an exhibit a

28

5

**United States District Court**

For the Northern District of California

1   redline or highlighted version identifying all changes.  If such a motion is not made, the answer

2   will be due ten calendar days thereafter.

3

4         **IT IS SO ORDERED.**

5

6   Dated:   August 15, 2013.



7                                        WILLIAM ALSUP
                                         UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28