IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ERNEST EVANS, THE LAST TWIST, INC., THE ERNEST EVANS CORPORATION,

Plaintiffs,

v.

HEWLETT-PACKARD COMPANY AND PALM, INC.,

Defendants.

No. C 13-02477 WHA

**ORDER DENYING MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

## INTRODUCTION

In this trademark dispute, trademark holders move for leave to file a second amended complaint. To the extent stated below, the motion is **DENIED**.

## STATEMENT

"The Chubby Checker" is the name of a risqué software application offered for sale and download on the HP App Catalogue, a web-based store operated by Hewlett-Packard Company and its subsidiary Palm, Inc. The app purports to estimate the size of a man's genitals based on his shoe size. The name "Chubby Checker" is thus used as a vulgar pun.

Chubby Checker was and is the stage name of Ernest Evans, a plaintiff herein, "a legendary musical entertainer" (Second Amd. Compl. ¶¶ 15, 32, Exhs. A–G). The Last Twist, Inc. and The Ernest Evans Corporation, both plaintiffs herein, own various registered marks associated with the name "Chubby Checker" (*ibid.*).

The first amended complaint alleged that defendants began offering the Chubby Checker app for sale on the HP App Catalogue in October 2006. Defendants allegedly did so with actual knowledge of plaintiffs' marks and actual knowledge that no plaintiff had consented to the use of the marks. Defendants nonetheless knowingly and willfully advertised, marketed, and sold the app in violation of those marks. In order for an app to be offered for sale on the HP App Catalogue, defendants employed an "application and approval process and knowingly decided to approve, accept, upload, host, market, advertise, sell and make provisions for the maintenance and updating" of the app (*id.* at ¶ 31). The first amended complaint alleged that at all relevant times, defendants "maintained primary control" of the use of the name and mark, as well as control over the revenues generated from sales of the app. It did not allege, however, that defendants were responsible for the creation or naming of the app. It alleged claims for: (1) federal trademark infringement, (2) federal trademark dilution, (3) federal unfair competition, (4) common law unfair competition, (5) common law trademark infringement, (6) unauthorized use of name or likeness under Pennsylvania law, and (7) unauthorized use of name or likeness under California law.

In June 2013, defendants moved to dismiss all claims. Defendants' motion was denied regarding plaintiffs' federal and common law claims for trademark infringement. Defendants' motion was granted regarding plaintiffs' remaining state law claims. Plaintiffs' state law claims were held barred by the preemption provision in Section 230 of the Communications and Decency Act because defendants are *service* providers rather than *content* providers.

Plaintiffs now move for leave to file a second amended complaint. Defendants oppose. Plaintiffs' proposed second amended complaint would add new allegations and four new claims: emotional distress claims under Pennsylvania and California common law. Most of the new allegations, however, would allege defendants performed editorial acts consistent with the conduct of a service provider. Other allegations would be more suggestive of a content provider. The proposed pleading would allege that defendants have "[c]reated, designed, developed and [sic] transformed at least parts of the content for the advertisements for the App which appear

2

to potential consumers and the public in both of its App Stores and at the point of purchase." Defendants, the proposed pleading says, also "[a]ssisted in the development, distribution, naming, endorsement and [sic] sale of an objectionable, humiliating and [sic] demeaning product, i.e., the App, aside from the content of the advertisements for the App and other communications about the App." The final significant new allegation is that defendants "[e]ntered into an express, common law, *de jure* or *de facto* partnership and joint venture agreement to split profits 70% / 30% with the third party" (Dkt. No. 71-1 ¶¶ 40(a), (d), (p)). The proposed pleading summarizes these new relevant allegations in a separate paragraph:

> Upon information and belief, the Defendants entered into an express, common law, *de facto* or *de jure* partnership and joint venture with a third party who made contributions to the creation, development and writing of the computer code for the App. Some or all of the terms of that relationship are set forth on Defendants' website, but include the sharing of profits (70%-30%) and the sharing of risk of losses. The relationship was one of trust as fiduciaries to each other. Each contributed to the naming, content of the App, description of the App and content of advertisements for the App. However, at all times material hereto, Defendants maintained control over such content, the App itself, its name, the sales of the App, the price of the App, the collection of revenues directly and indirectly related to the App, the synchronization of the App, its settings and data entered into the App between personal computer and devices and support for the devices on which the devices run.

(*id.* ¶ 29). A hearing was held on October 10, 2013.

## ANALYSIS

Under FRCP 15, leave to amend should be freely given when justice so requires. The underlying purpose of FRCP 15 is to facilitate decisions on the merits, rather than on the pleadings or technicalities. *United States v. Webb,* 655 F.2d 977, 979 (9th Cir. 1981). Leave to amend should generally only be denied under FRCP 15 "upon showing of bad faith, undue delay, futility, or undue prejudice to the opposing party." *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1152 (9th Cir. 2011).

A complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when there are sufficient factual allegations to draw a reasonable inference that the defendant is liable for the misconduct alleged. While a court "must take all of the factual

3

allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### 1. SECTION 230 OF THE COMMUNICATIONS DECENCY ACT.

In part, Section 230 states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider," and expressly preempts any state law to the contrary. 47 U.S.C. 230(c)(1), (e)(3). Put differently, the CDA safe harbor protects internet *service providers* from being sued based on material published by *content providers*. Section 230 was enacted "to promote the continued development of the Internet and other interactive services" and "to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation." 47 U.S.C. 230(b)(1)(2). Our court of appeals has explained:

> The majority of federal circuits have interpreted the CDA to establish *broad federal immunity* to any cause of action that would make service providers liable for information originating with a third-party user of the service . . . . Because material on a website may be viewed across the Internet, and thus in more than one state at a time, permitting the reach of any particular state's definition of intellectual property to dictate the contours of this federal immunity would be contrary to Congress's expressed goal of insulating the development of the Internet from the various state-law regimes.

*Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007) (internal quotations and citations omitted, emphasis added). Section 230 of the CDA bars state law claims against internet service providers based on content provided by a third party. *Ibid.*

Section 230(f)(3) defines a content provider as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." Our court of appeals has held that if a website provider displays content "created entirely by third parties, then it is only a *service provider* with respect to that content." *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (emphasis added).

### 2. PROCEDURAL POSTURE.

Plaintiffs argue that the CDA is an affirmative defense and therefore that resolution under Section 230 is not proper via FRCP 12(b)(6). Alternatively, plaintiffs argue that their proposed amended complaint does not provide adequate facts upon which to make a determination at this stage (Br. at 5). This order disagrees.

Plaintiffs cite authority that refers to the CDA as an affirmative defense: *Pirozzi v. Apple, Inc.*, 913 F. Supp. 2d 840, 848 (N.D. Cal. 2012) (Judge Yvonne Gonzalez Rogers) and *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1109 (9th Cir. 2009). This argument is irrelevant because our court of appeals has held that "the assertion of an affirmative defense may be considered properly on a motion to dismiss where the 'allegations in the complaint suffice to establish' the defense." *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013). Our previous order relied on the CDA and dismissed the state law claims on the ground that HP is a service provider (Dkt. No. 67). The proposed pleading fails to adequately plead around the CDA because it does not provide the requisite factual basis to infer that the defendant is a content provider.

Plaintiffs' reliance on *Pirozzi* is unavailing. In *Pirozzi*, the court refused to dismiss the claims under the CDA because of the "scant record before the court" and the plaintiff alleged that the defendant "somehow misled Plaintiff as to the nature and integrity of [the defendant's] products." 913 F. Supp. 2d at 849. Here, there is no debate over whether the product has been accurately described and the plaintiffs' allegations pertain entirely to the content of the app. This order accordingly finds that Section 230 bars plaintiffs' claims at the pleading stage.

Section 230 preemption is appropriate here because Section 230 "creates a federal *immunity* . . . . Specifically, § 230 precludes courts from entertaining claims that would place a computer service provider in a [content provider's] role." *Zeran v. America Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997). Our court of appeals agreed with the "consensus developing across other courts of appeals that § 230(c) provides broad *immunity* for publishing content provided primarily by third parties." *Carafano v. Metrosplash.com Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003).

5

There does not appear to be any direct Ninth Circuit authority specifically holding that Section 230 preemption is appropriate at the pleading stage. There are, however, several district court decisions holding that evaluating Section 230 immunity was proper at the dismissal stage: *Goddard v. Google*, 640 F. Supp. 2d 1193, n.5 (N.D. Cal. 2009) (Judge Jeremy Fogel), *Holomaxx Techs. v. Microsoft Corp.*, 783 F. Supp. 2d 1097, 1103 (N.D. Cal. 2011) (Judge Jeremy Fogel), and *Gavra v. Google, Inc.*, No. 5:12-CV-06547, 2013 WL 3788241 (N.D. Cal. July 17, 2013) (Magistrate Judge Paul Grewal). This order joins these decisions in holding that "affirmative defenses routinely serve as a basis for granting Rule 12(b)(6) motions where the defense is apparent from the face of the complaint." *Goddard*, 640 F. Supp. 2d at n.5 (internal quotes removed).

### 3. CONCLUSORY ALLEGATIONS.

The gravamen of plaintiffs' new allegations is that defendants were not mere service providers but actually were content providers after all. Specifically, plaintiffs allege that defendants "created, designed, developed and [sic] transformed" parts of advertisement content and "assisted in the development, distribution, naming, endorsement and [sic] sale" of the app. Without more, these allegations are too conclusory.

Plaintiffs provide other factual allegations, but all of them fall under editorial conduct within the duties of service providers. *Carafano*, 339 F.3d at 1124 (citing *Zeran*, 129 F.3d at 330-31) ("[S]o long as a third party willingly provides the essential published content, the interactive service provider receives full immunity regardless of the specific editing or selection process"); *see also Batzel v. Smith*, 333 F.3d 1018, n.18 (9th Cir. 2003). Plaintiffs' proposed pleading would allege 26 ways in which defendants exercised control over the app. For example, plaintiffs allege that defendants "[m]andated specific 'Application Content Criteria' for all content of the App," "[m]andated 'App Naming Guidelines' for the App," and "[m]andated technical criteria for the App" (Second Amd. Compl. ¶ 40). Plaintiffs do not allege that any of these editorial controls are specific to "The Chubby Checker" product. The third party still provided the published content and defendants only provided the editorial parameters.

6

1    Plaintiffs argue strenuously that their cited authority supports liability under Section 230,
2 but their allegations fall short. Plaintiffs' simply state legal conclusions and therefore fail to
3 meet the *Twombly/Iqbal* standard.

### 4. NO PLEADING AROUND SECTION 230.

Plaintiffs attempt to plead around Section 230, but these schemes fail. *First*, plaintiffs argue that defendants are partners with the third-party content providers because they have a profit-sharing agreement. Plaintiffs cite to *Cnty. of Riverside v. Loma Linda Univ.*, 173 Cal. Rptr. 371, 376 (Ct. App. 1981), which held that a joint venture involves "a common business undertaking, an understanding as to the sharing of profits and losses and a right of joint control." Plaintiffs' allegations do not meet this standard. While defendants do "share" profits with content developers, the proper characterization is not traditional "profit-sharing," but rather a mere commission. Plaintiffs concede this in their reply brief when they note that defendants "received commission from selling the app" (Dkt. No. 77 at 5). Defendants were working "together" with the content developer to sell apps in a loose sense, but defendants were not jointly engaged in development of the *content*.

*Second*, as stated in the August 15 order dismissing claims in this action, plaintiffs' state law intellectual property claims are barred by Section 230 under *Perfect 10*, 488 F.3d at 1118. Plaintiffs' emotional distress tort claims are predicated on the same conduct as their state law intellectual property claims: the conduct of the content providers. Plaintiffs' state law claims are barred by Section 230 regardless of how they are pled. *Barnes*, 570 F.3d at 1101–02 ("[W]hat matters is not the name of the cause of action . . . what matters is whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another").

### CONCLUSION

To the extent stated above, the motion is **DENIED**. Plaintiffs' eight state law claims — violation of Pennsylvania's unfair competition and trademark laws, Pennsylvania's and California's right of publicity statutes, and Pennsylvania's and California's emotional distress laws — are preempted by the CDA.

7

During discovery on the federal claims still in play, counsel may learn specific facts about defendants' actual roles that would allow counsel to plead around the safe harbor for service providers. In that case, if the standards for a late amendment under FRCP 16 are satisfied, the Court would then entertain a motion to amend. Until then, if ever, no further pleading amendments by plaintiff will be allowed. Defendants' answer is due by **NOON ON OCTOBER 18, 2013**.

**IT IS SO ORDERED.**

Dated: October 10, 2013. 

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE